BURKS, J.
Under the decree of December 1, 1868, rendered in the consolidated causes of Yancey, receiver, v. Yancey & others, the same v. Teel & others, and'Conrad’s gdn. v. Conrads & others, the appellees, William B. Yancey and Bernard P. Teel, were the principal ^debtors; George W. Mauzy was the surety of the said William B. Yancey, and James M. Weaver and the appellant, H. B. Harnsberger, were the separate sureties of said Teel for equal amounts, and the lands ordered to be resold stood as a primary security for the payment of the sums decreed against the principals and their respective sureties. Weaver and Harnsber-ger, though bound for the same principal, were not bound for the same debt, but by different instruments for distinct portions of the, same debt, and, as between themselves, under separate and distinct contracts. Although, therefore, they were sureties, they were not co-sureties. 1 Lead. Cas. Eq., (Dering v. Earl of Winchelsea,) 108,side p., and cases there cited. That decree, on appeal to the district court, was there affirmed, and on a further appeal from that court to this, the decree of the district court was affirmed here. The relations of the original parties inter se under the decree remained the same after affirmance as before, unless they were altered, and except so far as they were altered, if altered at all, by the appeals taken and the appeal bonds which were given.
According to the view of the court below', the legal effect of the bonds was to substitute the obligors to the liabilities of the original debtors — of Yancey, the principal debtor, as well as of Weaver, the surety — and not only to preclude these obligors from all right to indemnity from the principal and contribution from the surety for whatever the obligors might be compelled to pay on the bonds, but also to require them to exonerate the principal and surety from all liability for any balance against them on the decree of December, 1868. after applying thereto the proceeds arising from a resale of the lands under that decree. This view resulted in the decree complained of in the present appeal. The liability of the appellant, PI. B. Harnsberger, *as surety for Teel, under the decree of December, 1868, was for the sum of $8.817.87, with interest from August 7, 1864. This was his only liability under that decree. The amount was subsequently reduced by the sale of the lands purchased by Teel to the sum of $6,268.71, principal money, which was paid by said Harnsberger under a decree of the court, Teel (the principal debtor as to this sum) having become bankrupt. Of the obligors in the bonds, H. B. Harnsberger was the only one (except Teel) embraced in the decree of December, 1868. After the resale of the lands and application of the proceeds to the decrees, the receiver, by leave of the court, instituted actions at law on the appeal bonds and recovered the full amount of the penalties combined, $20,000. Of this sum Stover and Trundle, who were sureties in the second bond, paid $4,500 besides a portion of tne costs, and the appellants paid the residue, $15.500, of which the sum of $5,000, though not actually paid down, was. under an arrangement between the parties, treated as paid. The net amount — $19,500—after deducting cost of collection, was applied rata-bly to the decrees against Yancey and Weaver, excluding H. B. Harnsberger altogether, $13,167.91 going to the benefit of Yancey, and $6.432.09 to the benefit of Weaver. Thus, it is seen, that H. B. Harnsberger has been compelled to pay as surety for Teel, who is insolvent, upwards of $6,000, and together with some of his co-obligo.rs. $20,000 in addition, all of which latter sum (less cost of collection) has been applied to the discharge pro tanto of the liabilities of the original debtors, and it is claimed that the parties who have thus suffered have no recourse either for indemnity or contribution against those debtors, and that this is a consequence of the peculiar conditions of the appeal bonds. It cannot be denied that the conditions of these bonds are singular enough, *and they must, indeed, be very peculiar if they bring about the results deduced from them by the court below, and now contended for here by the learned counsel for the appellees.
We have only one of the bonds with .the condition subjoined copied into the record, but it seems to be agreed, that the conditions of each bond, so far as it relates to the questions raised on the present appeal, is in substance the same. After the usual recitals, the condition runs thus: “If, therefore, the said B. P. Teel. Chas. Price, H. B. Harns-berger, J. M. C. Harnsberger, A. J. Johnson, Chas. H. Sowers and, R. S. Harnsber-ger, shall prosecute the said suit with effect and shall pay the judgment aforesaid *523 and all such costs and damages as shall be awarded in case the said judgment be affirmed, also any deficiency in the funds arising from the land sales decreed, in meeting and discharging the sums decreed vs. the parties respectively in case the said decree complained of be affirmed or the appeal or supersedeas be dismissed, then the above obligation to be void, else to remain in full force and virtue.”
Literally construed, this is an undertaking, in case the decree appealed from be affirmed or dismissed, not only to pay all costs and damages awarded and the amount of the decree appealed from, but “also” the “deficiency” mentioned. In other words, the obligors bind themselves to pay, on the happening of the contingency named, the whole of the decree with the costs and damages, and, in addition thereto, the deficiency in the land sales, that is, either to pay a portion of the debt twice to the creditor or once to the creditor and then again to the original purchaser of the land or their sureties. An interpretation that leads to such absurd consequences cannot be tolerated for an instant in any court, much less in a court of equity. Nor is the construction contended for by the appellees much less ^objectionable. Their contention, if I understood it, is, that the instrument binds the obligors to the payment of the decree, costs, and damages, and “also” to indemnify the original purchasers and their sureties against all loss on resale of the lands.
A sufficient answer is, the language employed -does not reasonably admit of any such construction. There is not a word about indemnifying anybody and nothing from which an intention to indemnify can be justly inferred. If the design had been such as is supposed, other and very different terms would have been employed. A provision for indemnity, involving possible or probable results of so grave a character, would never have been couched in language so inappropriate, vague and indeterminate.
I think I have discovered the source of all the trouble and difficulty in this matter.
Recurring to the decree of December. 1868, it will be seen, that it was a personal decree against Yancey and his surety Mauzy for $17,545.91 with interest from August 7, 1864, and against Teel and his sureties for equal parts of $17,629.74 with interest from the same date. The principal of these combined sums with interest till the date of allowance of the appeal was upwards of $45,000.
The decree, as before stated, also ordered a sale nisi of the lands to satisfy the sums decreed. An appeal bond with the usual condition to pay costs and damages and to perform and satisfy the decree in case of affirmance or dismissal, would have required a penalty of a very large amount, not looking to the land which stood as a primary security for the sums decreed. The learned judge, who awarded the appeal, therefore, in ease of the appellants doubtless and seeing that it was only necessary to provide security by bond for the deficiency, if any, of the pro-' ceeds of the land sales to ^satisfy the decree, directed a bond to be given with that condition only and in the comparatively small penalty of $10,000, supposing that such penalty would be large enough to cover that deficiency.
The order allowing the appeal is in these words:
“1869, March 9th.
“Appeal and supersedeas allowed upon the petitioners or some of them, or some one for them, giving bond in the penalty of ten thousand dollars ($10,000), with good security therein, conditioned to pay costs and damages according to law, and also any deficiency in the funds arising from the land sales decreed, in meeting and discharging the sums decreed against the parties respectively, in case the decrees complained of be affirmed on the appeal or supersedeas dismissed.”
Comparing this order with the statute in relation to appeal bonds (Code of I860, ch. 182, § 21), it will be seen, that the condition of the bond prescribed by the order follows the statute closely, except in the statutory requirement “to perform and satisfy the judgment, decree or order.” This is wholly omitted and intentionally, no doubt, and the provision in regard to the “deficiency” is substituted for it. The provision in the order, if the penalty of the bond had been large enough, would have secured the satisfaction of the decree as certainly and as effectually as a condition would have done in the literal terms of the law. To be sure, if the order had been followed as it was written by the judge, the bond could not have been resorted to until the lands had been sold, but when sold and the proceeds applied to the decree, the “deficiency” — the residue of the decree not paid by the land sales — the term “deficiency,” as here used, means nothing else — could have been made by the receiver out of the obligors in *the bond. The careful and skillful manner in which the order was drawn and the use of the very terms of the statute in the particulars wherein its provisions were intended to be literally pursued, forbid the supposition, that, when a most important provision is left out and another adopted in its place which was substantially its equivalent, such omission and substitution were not designed.
When the clerk however took the bond, in writing out the condition, instead of following the order of the judge, as he should have done, or, if he took upon himself the respon-bility of departing from it, pursuing the terms of the statute alone, he attempted, it seems, to follow both and thus made the condition apparently incongruous — binding the obligors to pay the decree, as the statute requires, “and also the deficiency,” &c., as the order directed. And out of this awkwardness or blunder, as I regard it, of the clerk in the discharge of a ministerial duty, has sprung the claim of the appellees Yan-cey and Weaver to indemnity or exoneration out of the proceeds of the appeal bond, which claim has, been allowed them by the circuit court.
*524 If the learned judge, who allowed the apr peal, had in his order prescribing the condition of the bond pursued the statute literally, it would have been a condition only to pay costs and damages and perform and satisfy the decree, in case of affirmance or dismissal of the appeal. If such had been the condition and nothing more, in case of a breach, the proceeds of the land sales would have been first applicable to the satisfaction of the decree, and then the obligors would have been liable for whatever was not paid by the sales; that is, for the “deficiency.” Now, the condition prescribed, by the order was substantially the same thing, namely, *to pay costs and damages and also the “deficiency in the funds arising,” &c.
Looking then to the decree of December, 1868, and the order allowing the appeal, I think the condition of the appeal bonds (for in taking the second bond the terms of the first were followed) should be construed as designed to secure to the receiver the amounts decreed and costs and damages, and not to indemnify any party for loss which might be sustained on resale of the lands; and that the stipulations to pay the decree, costs and damages, “and also the deficiency” on resale of the lands should be regarded as alternative provisions intended to accomplish but one and the same object, namely, the satisfaction of the decree and the payment of costs and damages according to law.
In this view, even if the obligors in the appeal bonds be considered as primarily bound to the extent of the penalties and therefore entitled neither to indemnity from Yancey as principal debtor nor to contribution from Weaver as a co-surety, yet the proceeds of these bonds when collected by the receiver were applicable to the satisfaction of the decree of December, 1868, reduced in the amounts by the subsequent sale of the lands, and not less applicable to the sum decreed against H. B. Harnsberger than to the sums decreed respectively against W. B. Yancey and James M. Weaver, and the apportionment of the fund among the parties by Commissioner Daingerfield in statements 1 and 3 of his report, rejected by the circuit court, is in accordance with this view.
But I am of opinion, after the most careful investigation and upon mature reflection, that the appellant H. B. Harnsberger is not only entitled to his proportion of the fund arising from the appeal bonds to be credited on the decree against him as surety of Teel as in statement No. 1 in the corn-missioner’s report, *but he and his co-obligors in the bonds, who have satisfied the penalties, and are entitled to indemnity from W. B. Yancey as principal debtor for the portion of the fund credited to said Yancey in said statement, and that they are also entitled to contribution from James M. Weaver as a co-surety on account of the portion of the fund credited in said statement on the decree against him. Stover and Mrs. Trundle, who paid a part of the penalty of the second bond, although parties to the suit, seem not to have asserted any claim to repayment from any one. It is said in the bill, that they paid under some arrangements with the appellants, the nature of which is not disclosed. So. the only parties seeking relief are the appellants (the three Harnsbergers), who together paid $10,500 and arranged to pay the further sum of $5,000, which for the purposes of this suit is to be considered as paid, making in all $15,500 paid by them. A portion of this — about one-fourth part — is to be credited on the decree against H. B. Harns-berger, and the remaining portion (three-fourths) is applicable in the hands of the receiver to the decrees against Yancey and Weaver, the one-half to the credit of Yan-cey and one-fourth to the credit of Weaver.
A principal for whom another, at his request, undertakes as security, although such principal’s name does not appear in the obligation given by the surety, is as much bound to indemnify such surety for what he pays on the obligation as if his name appeared in it as principal, and the surety in such case is entitled by subrogation to enforce for his exoneration or indemnity all the rights, remedies, and securities of the creditor against the principal debtor. Upon this principle the case of Enders, &c., v. Brune, 4 Rand. 438, was decided. 'And in applying the principle the rule is broad enough, it is said, to include every instance where one pays a *debt for which another is primarily answerable, and that should in equity and good conscience have been discharged by him. 1 Lead. Cas., Eq., Part 1 (4th Amef. Edn.) 148, top p., notes to Dering v. Earl of Winchelsea, and cases cited.
And so, if there be two parties bound as principal and surety for a debt or other engagement, and a third party afterwards, at the request of the principal, bind himself as surety for such debt or engagement, the two sureties, in the absence of any agreement to the contrary, become co-sureties of the same principal and for the same debt or engagement. In either case, to establish the relation predicated, it is not necessary to show an express request by direct proof. Circumstances may be shown from which a request may be fairly and reasonably inferred.
But where there is a judgment or decree against a principal debtor and his surety, and a third party at the instance of the principal and for his sole benefit and without the assent of the surety, enters as surety for the principal in an obligation, the effect of which is to suspend the execution of the judgment or decree and thus prejudice the rights of the first surety, the equity of the latter is superior; and it seems to be well settled that in such case the second surety would not be entitled to contribution from the first, and there is much authority for the proposition that the first would be entitled to indemnity from the second. This principle has been applied to injunction bonds, bail bonds, prison-bounds bonds, forthcoming bonds, and appeal bonds. Langsford, ex’or, v. Perrin, 5 Leigh 552; Douglass v. Fagg, 8 Leigh 558; Givens v. Nelson’s ex’or, 10 Leigh 382; Stout v. Vause, 1 Rob. R. 169; Robinson & others v. Sherman & others, 3 Gratt. 178; Bentley & *525 others v. Harris’ adm’r, Id. 357; Leake v. Ferguson, Id. 419; Preston v. Preston & others, 4 Gratt. *88; Dering v. Earl of Winchelsea, and notes, 1 Lead. Cas. Eq., Part 1 (4th Amer. Edn.) 156, 157, 158, 159, top p., and cases there cited.
The rule supposes that the first surety does not sanction the interposition of the second. It does not apply, therefore, “where the surety in the second bond becomes bound for a purpose in which both the principal and the prior surety concur, in which they both have an interest, and where the assent of the prior surety is expressly given, or is clearly to be inferred from the circumstances.” Hartwell v. Smith, 15 Ohio N. S. 200. cited 1 Lead. Cas. Eq., Part 1, 158.
Although the appeal bonds in the present case suspended the execution of the decree as to all the parties, yet it sufficiently appears from the record as it seems to me, that H. B. Harnsberger with his co-obligors gave the bonds not merely for himself and in his own interest but also in the interest and behalf of all the appellants, including Yancey and Weaver, and with their sanction and approval.
First, as to Yancey. He with Weaver, H. B. Harnsberger, and others, stand as appellants on the record in the district court and in this court. They are named as appellants in both petitions for appeals, errors in the decree arc assigned as by them, and their names are all signed to the petitions. The late John B. Baldwin, distinguished not less for his integrity as a man than for his ability and learning in the law, representing the firm of Baldwin & Cochran, was, it is said, the acting counsel for the appellants in both courts. It is not to be presumed, that in preparing the petitions and prosecuting the appeals, he would have used the name of any party without his authority. Besides, the appeals were pending in the two courts for more than four years, the parties in the meantime residing, it would seem, not remotely from each other, and although *they must have known all about the appeals, it does not appear, that any of them ever pretended, that they were not really appellants as the record represents them to have been, until after the Harns-bergers filed their bill for relief in the court below. Again, it might seem from the statements of Yancey in his answer, that he was not interested in prosecuting the appeals or that his interest was to sustain the decree sought to be reversed, yet it distinctly appears by exhibit “S. S.” that he was engaged in prosecuting the appeals, at least the appeal in the district court.
Second, as to Weaver. What has been said in regard to the petitions and the prosecutions of the appeals applies as well to him as to Yancey. As to his interest, it was precisely the same as Harnsberger’s and he had exactly the same motives to appeal and prosecute the suits in the appellate courts as Harnsberger had. Both were sureties for the same principal, who was also one of the appellants and signed the bonds, and each was bound for the like amount. But in addition, the day on which the lands were to be sold as advertised under the decree of December, 1868, to-wit, on the 10th day of March, 1869, which was the next day after the first appeal was allowed and before the appeal bond was given. Weaver united with others, some of whom were defendants and all of whom were interested, in a written request to the commissioner to postpone the sale, for the purpose, no doubt, of getting time to perfect the appeal by giving the bond required; “believing,” as the writing states, “that the interest of the defendants will (would) be promoted by a postponement of the sale,” &c.
These circumstances and others that might be mentioned convince me, that Yancey and Weaver co-operated with the other appellants in procuring and prosecuting the appeals, and although they did not sign the *appeal bonds, still the bonds were given with their concurrence and as well in their interest and behalf as in behalf of the other appellants. In my judgment, they ought not to be allowed, upon any slight grounds, after taking with others the chances of success in the appellate courts, to cast upon their associates the whole burden of the loss arising from failure to prosecute the appeals with effect.
Yancey never ceased to be principal debt- or for the amount decreed against him, and the obligors in ihe bonds, by virtue of their undertaking with his approval, because his sureties for said amount, and, on familiar equitable principles, are entitled to indemnity from him for whatever they paid for him on the bonds, and, by subrogation, to stand in the shoes of the creditor (the receiver) and enforce for their relief all the liens and securities of said creditor against sa;d principal debtor.
While Weaver continued to be surety for the amount decreed against him and Teel his principal, yet by the execution of the bonds with his concurrence, the obligors (except Teel) became thereby not sureties for or instead of him but sureties with him, that is, co-sureties for the amount of the decree against him, and are entitled, not to full indemnity from him (as in the claim against Yancey) for what was paid by them on the bonds and applied to his relief on the decree, but to contribution of an equal share of what was so paid and applied; and to enforce such contribution (Teel being insolvent) they are entitled to the same rights and remedies, by subrogation against their co-sure'ty, as a surety, under like circumstances, would be entitled to against his principal. Robertson v. Trigg’s adm’r & als., 32 Gratt. 76, 85, 86.
The appellants, it seems, are the only solvent obligors in the first bond, and Stover and Trundle, their *only co-obligors (besides Teel) in the second, have paid their portion of the penalty of that bond under some arrangement among the parties, and. as before stated, do not seem to be. claiming relief from any party in the cause, and no party appears to be seeking to hold them to further accountability. So that, the appellants, three in number, having contributed, as they state in their bill, in *526 equal portions to the discharge of the two bonds, are entitled to recover from Weaver the share, which he as co-surety was bound to contribute, of what was so paid by them and credited on the decree against him.
_ There is no occasion to consider the equities of the obligors inter se, as none such arise on the record, no controversy among said obligors being disclosed.
Upon the whole case, environed as it is with difficulties that have embarrassed and perplexed me not a little'in my investigations, my conclusions are:
First. That the net amount of the whole fund arising from the appeal bonds is applicable ratably to the payment pro tanto of the amounts decreed against W. B. Yancey, James M. Weavér, and H. B. Harnsberger respectively, as shown by statements No. 1 and No. 3 of Commissioner Daingerfield’s report.
Second. That deducting from said net amount the net sum paid by Stover and Trundle and apportioning the residue rata-bly among the said parties and applying the same in proper proportions to the decrees against them, the appellants are entitled to recover from Yancey the amount thus apportioned to him and to enforce the collection thereof by substitution to the decree of the receiver and all other securities he holds against said Yancey for the same.
Third. That of the sum thus apportioned to Weaver, the appellants are entitled to recover of him his contributory share thereof as co-security with them and *any other solvent sureties who were bound with them, if any such there be, for said sum, and to be substituted to all the rights and remedies of the receiver against said Weaver for the recovery of the same.
H. B. Harnsberger having paid up the full amount of the decree against him as surety of Teel, after receiving credit for his portion of the fund from the appeal bonds, will be entitled to reimbursement for what he has overpaid on said decree. And so he and the other appellants are bound for the $5,000 which has been treated as paid, though not in fact paid. These and other like matters can be adjusted in the decrees among the parties.
I have taken no notice of the questions in controversy between W. B. Yancey on the one side and his sub-vendees Teel and Price and their sureties Sipes and Miller on the other, because I do not perceive that these questions are properly here for decision on the present appeal, not having been adjudicated by the decree of the circuit court but expressly reserved by that court for future determination.
For the reason stated, I am of opinion, that the decree appealed from should be reversed and the cause remanded to the circuit court for proper accounts and further proceeding, in order to final decree, in conformity with the views and principles here-inbefore declared.
CHRISTIAN and ANDERSON, Js., concurred in the opinion of Burks, J.
STAPLES, J., dissented.
The decree was as follows:
This day came again- the parties, by their counsel, and the court having maturely considered the transcript of *the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record:
First. That the net amount of the whole fund arising from the appeal bonds in the bill and proceedings mentioned, is applicable ratably to the payment pro tanto of the amount decreed against the appellees, W. B. Yancey and James M. Weaver, and the appellant, H. B. Harnsberger, respectively, as shown by settlements Nos. 1 and 3 of Commissioner Daingerfield’s report.
Second. That deducting from said net amount of the whole fund aforesaid the net sum paid by the appellees, Solomon Stover and Elizabeth H. Trundle, the residue should be apportioned ratably among the said parties — W. B. Yancey, James M. Weaver, and H. B. Harnsberger — in the ratio of the amounts decreed against them respectively; and the amount so apportioned to the said W. B. Yancey, the appellants are entitled to recover against him, and to enforce the collection thereof by substitution to the decree of the receiver (C. A: Yancey) and all other securities held by the latter against the said W. B. Yancey for the same.
Third. That of the sum thus apportioned to the said Weaver, the appellants are entitled to recover against him his contributory share thereof as co-surety with them, and any other solvent sureties, if any there be, who are bound with them for said sum, and to be substituted to all the rights and remedies of the said receiver against said Weaver for the recovery of the same.
Fourth. That the appellant, H. B. Harns-berger, having paid to the said receiver the "full amount of the decree against him as surety of Bernard P. Teel, after receiving credit for his portion of the fund arising *from the appeal bonds, is entitled to reimbursement for whatever he has overpaid on said decree. And so he and the other appellants are bound for the five thousand dollars ($5,000) in the proceedings mentioned as arranged to be paid, but which has not in fact been paid. These matters should be adjusted in the decrees among the parties.
Fifth. That the question in controversy between the said W. B. Yancey on the one side, and his subvendees, Bernard P. Teel and Charles M. Price and their respective sureties, Henry E. Sipe and William S. Miller, on the other, are not properly before this court on the present appeal, not having been adjudicated by the decree of said circuit court appealed from, but expressly reserved by that court for future determination; and therefore this court expresses no opinion upon said questions.
Sixth. That the decree _ aforesaid, pronounced by the said circuit court on the 29th day of November, 1878, is in conflict with the opinion of this court hereinbefore expressed, and is erroneous. Therefore, it is decreed and ordered, that the said decree of the 29th day of November, 1878, be re *527 versed and annulled, and that the appellants recover against the appellees, W. A. Yan-cey and James M. Weaver, their costs by them expended in prosecution of the appeal aforesaid here, and this cause is remanded to the said circuit court, with directions to that court to order such accounts and take such further proceedings in the cause as may be necessary and proper in order to final decree, in conformity with the opinion and principles hereinbefore expressed and declared. All of which is ordered to be certified to the said circuit court of Rockingham county.
Decree reversed.